# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

SHEILA BLACKWELL, et al                                          PLAINTIFFS

V.                                    CAUSE NO. 3:18-CV-141-CWR-FKB

BANKERS TRUST COMPANY OF                                                 DEFENDANT
SOUTH DAKOTA

## ORDER

Before the Court are defendant's motion to dismiss and plaintiffs' motion for leave to file a sur-reply. For the reasons stated below, both motions are denied.

**I.      Factual and Procedural History**

This case arises under the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiffs Sheila Blackwell and Jo Ann Battieste filed suit on behalf of themselves and other Sta-Home Health & Hospice employees who were participants in Sta-Home's Employee Stock Ownership Plan ("ESOP").

The Caracci family founded Sta-Home Health & Hospice in the 1970s and it became one of the largest privately-owned home health care providers in Mississippi.

In January 2014, the ESOP entered into an agreement with Sta-Home to buy 7,800,000 shares of the company from the Caracci family in exchange for $75,500,000. The ESOP financed the purchase with a loan backed by Sta-Home at an interest rate of 3.45% and a maturation date of December 31, 2038. Sta-Home hired Bankers Trust Company of South Dakota ("BTC") to be the trustee of the ESOP during the stock purchase.

Approximately three years after the ESOP purchased the stock, AccentCare, Inc., based in Dallas, Texas, bought Sta-Home.

Plaintiffs argue that BTC's "authorization of the [ESOP's] purchase of Sta-Home stock from parties in interest, members of the Caracci family, on January 17, 2014, was prohibited by ERISA . . . ." Docket No. 15 at 5. Plaintiffs claim that BTC's lack of due diligence during the ESOP stock purchase allowed the Caracci family to "unload their interests in Sta-Home above fair market value, and saddle Plan participants with millions of dollars of debt payable to finance the Transactions. The [Caracci family] also enjoyed millions of dollars of tax benefits by selling Sta-Home to the Plan . . . ." Docket No. 1 at 2–3.

BTC disputes these allegations and moved to dismiss the complaint for failure to state a cognizable claim. Alternatively, BTC argues that the Court should strike certain portions of the complaint as immaterial and prejudicial under Federal Rule of Civil Procedure 12(f). Plaintiffs then moved to file a sur-reply in further support of their opposition to the motion to dismiss. Both sides have also filed notices of supplemental authorities.

## II. Legal Standard

Rule 12(b)(6) authorizes dismissal of actions that fail to state a claim upon which relief may be granted. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007).

At this stage, prior to any discovery, plaintiffs must identify "the factual contentions [that] have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). As the seminal guide on federal practice has put it:

> But beyond the technical question of authority, permitting allegations on information and belief is a practical necessity. How else can a pleader avoid the appearance of perjury when he is without direct personal knowledge regarding one or more of the allegations necessary to his claim and therefore must plead on a less certain footing? Pleading on information and belief is a desirable and essential expedient when matters that are necessary to complete the statement of a claim are not within the knowledge of the plaintiff but he has sufficient data to justify interposing an allegation on the subject.

Charles Alan Wright & Arthur R. Miller, Fed. Prac. and Proc. § 1224 (3d ed. 2018).

In the context of ERISA cases, the Fifth Circuit has held that:

> while a plaintiff must offer sufficient factual allegations to show that he or she is not merely engaged in a fishing expedition or strike suit, we must also take account of his or her limited access to crucial information. This is because if plaintiffs cannot state a claim without pleading facts which tend systemically to be in the sole possession of defendants, the remedial scheme of the statute will fail, and the crucial rights secured by ERISA will suffer.

*Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.*, 892 F.3d 719, 730–31 (5th Cir. 2018) (quotation marks, brackets, and citations omitted)*; see also Johnson v. Johnson*, 385 F.3d 503, 531 n.19 (5th Cir. 2004) ("'information and belief' pleadings are generally deemed permissible under the Federal Rules, especially in cases in which the information is more accessible to the defendant."). For these reasons, "[m]otions to dismiss under Rule 12(b)(6) 'are viewed with disfavor and are rarely granted.'" *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citation omitted).

Under Rule 12(f), meanwhile, a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

A district court should not strike challenged portions of a complaint because they "offend the sensibilities" of the objecting party. *United States v. Coney*, 689 F.3d 365, 379 (5th Cir. 2012) (quotation marks and citation omitted). An allegation should be stricken only if it possesses "no possible relation to the controversy," which is a remedy used "sparingly" by the Court. *Id.* (quotation marks and citations omitted). If an allegation is "relevant" and "minimally supported" by the allegations set forth in the pleadings, it should not be stricken. *Id.* at 380. It is ultimately within the Court's broad discretion to decide whether to strike. *Gilchrist v. Schlumberger Tech. Corp.*, 321 F.R.D. 300, 301–02 (W.D. Tex. 2017) (citations omitted).

## III. Discussion

Broadly, BTC argues that plaintiffs "merely recite the elements of certain prohibited transactions defined in [ERISA] and plead nothing more than conclusory allegations in support of these claims." Docket No. 13 at 5.

### A. Claims under 406(a)(1)

Plaintiffs have alleged that the fiduciary, BTC, caused the ESOP to engage in a sale with a party in interest, the Caracci family. *See* Docket No. 1 at ¶¶ 18–20, 47, 51. Section 406(a)(1) provides that:

> **(1)** A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—
> **(A)** sale or exchange, or leasing, of any property between the plan and a party in interest;
> **(B)** lending of money or other extension of credit between the plan and a party in interest;

29 U.S.C. § 1106(a)(1)(A)–(B). Thus, they satisfy the pleading requirement on this claim.

If enforced facially, however, this would prohibit the creation of ESOPs, counter to the legislative purpose of ERISA. Courts have therefore held that "the prohibited transaction rule

4

does not apply if the sale is for adequate consideration. This means that an ESOP may acquire employer securities in circumstances that would otherwise violate Section 406 if the purchase is made for adequate consideration. The fiduciaries have the burden to prove this affirmative defense." *Perez v. Bruister*, 823 F.3d 250, 262 (5th Cir. 2016) (quotation marks and citations omitted).

ERISA defines adequate consideration as "the fair market value of the asset as determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan and in accordance with regulations promulgated by the Secretary." 29 U.S.C. § 1002(18). The Fifth Circuit has held that "ESOP fiduciaries will carry their burden to prove that adequate consideration was paid by showing that they arrived at their determination of fair market value by way of a prudent investigation in the circumstances then prevailing." *Perez,* 823 F.3d at 262–63. "[T]he ERISA § 408(e) adequate consideration exemption is expressly focused upon the *conduct* of the fiduciaries and is read in light of the overriding duties in ERISA § 404, particularly the duty of care." *Id.* at 263 (quotation marks and citation omitted) (emphasis in original).

BTC argues that the complaint fails because it does not provide facts alleging how BTC's conduct was inadequate. The Court disagrees. First, the complaint contains an allegation regarding BTC's conduct:

> Plaintiffs further allege that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. BTC did not perform due diligence similar to the due diligence that is performed by third-party buyers in large corporate transactions in the course of the ESOP Transaction. The Plan overpaid for Sta Home stock on and as of January 17, 2014, due to BTC's reliance on unrealistic growth projections, unreliable or out-of-date financials, improper discount rates, inappropriate comparable companies, and/or its failure to test assumptions, failure to question or challenge underlying assumptions, and/or other factors that rendered its valuation of Sta-Home stock in the ESOP Transaction faulty. Due to

5

the Plan's overpayment, the Plan's participants, including Plaintiffs, received diminished stock allocations, took on excessive debt to finance the Transaction, and suffered losses to their individual Plan accounts.

Docket No. 1 at ¶ 89.

BTC next argues that it can prove an affirmative defense on a motion to dismiss. BTC is incorrect. *See Perez*, 823 F.3d at 262 ("The fiduciaries have the burden to prove this affirmative defense."). The Fifth Circuit has reiterated that notice pleading is adequate because there is an imbalance in access to information in ERISA cases. *See Innova Hosp. San Antonio,* 892 F.3d at 730–31. BTC has not provided any controlling case law where courts dismissed ERISA actions because the plaintiff did not preemptively address an affirmative defense.

It might be that BTC's defense proves successful in this case at a later stage. At this point, however, the plaintiffs allege one thing and BTC claims another. That is a fact dispute not appropriate for resolution at this time.

### B. Claims under 406(b)

Plaintiffs allege that "BTC received consideration for its own personal account from Sta-Home for BTC's services in the ESOP Transaction in the form of fees under a contract made between BTC and Sta-Home prior to the Plan's purchase of Sta-Home." Docket No. 1 at ¶ 53. Section 406(b) provides that:

> A fiduciary with respect to a plan shall not—
> **(2)** in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or
> **(3)** receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

28 U.S.C. § 1106(b)(2)–(3).

Plaintiffs further allege that Sta-Home paid BTC's trustee fees in connection with the establishment of the ESOP stock purchase and that Sta-Home's "[i]ncentives to BTC to act in

favor of the Sellers in the ESOP Transaction included engagement as the Plan's ongoing trustee after the ESOP Transaction and the fees paid for that engagement; the possibility of referrals of business by the companies and persons on the Seller side of the ESOP Transaction; and business from sellers of companies who believed that BTC did not conduct due diligence and valuations as stringently [as] would a private equity buyer but would essentially rubber stamp a stock purchase falling within a price range acceptable to sellers." Docket No. 1 at ¶ 90.

*Swain v. Wilmington Trust* is persuasive on this point. In addressing a motion to dismiss in a very similar case, the court found that the complaint stated a plausible cause of action. In regard to the § 406(b)(2) claim, the court pointed to the plaintiff's complaint, which stated:

> Wilmington Trust acted on behalf of Seller in connection with the Plan's stock and loan transactions in 2012 with Seller by causing the Plan to acquire ISCO stock and a loan. This greatly benefited Seller to the substantial detriment of the Plan, even though Wilmington Trust was required to serve the interests of the Plan in connection with any such transaction.

No. CV 17-71-RGA-MPT, 2018 WL 934598, at *6 (D. Del. Feb. 16, 2018). Next, the court noted that in regard to the § 406(b)(3) claim, the complaint alleged that "Wilmington Trust received compensation from ISCO as Trustee for the Plan in violation of ERISA § 406(b)(3)." *Id*. The court denied the motion to dismiss for failure to state a claim on these ERISA violations.

Here, plaintiffs have provided more details than in *Swain* regarding the incentives BTC had for brokering such a deal. They have alleged a plausible conflict in BTC's representation. As such, plaintiffs have adequately stated a claim for relief.

### C. Motion to Strike

Alternatively, BTC argues that it stopped operating as the trustee of the ESOP after the plan purchased the stock and before Sta-Home was ultimately sold to another company. Thus, BTC argues that the complaint's references to the later sale of Sta-Home should be stricken as

immaterial and inflammatory. After briefing was complete, BTC filed notice of additional authority and included a copy of a letter from the IRS. *See* Docket No. 30. This letter demonstrates, according to BTC, that the ESOP qualified under relevant treasury regulations and as such, BTC may rely on the affirmative ERISA defenses. BTC adds that this IRS letter proves that "allegations related to the Plan's termination (which post-dated Defendant's tenure as Plan trustee) are immaterial," and as such, should be stricken.

BTC's claim regarding affirmative defenses has already been addressed. The Court agrees with plaintiffs that the IRS letter is not dispositive. *See* Docket No. 31. A component of a complaint should be stricken only if it possesses "no possible relation to the controversy." *Coney*, 689 F.3d at 379 (quotation marks and citation omitted). That is not the case here.

### D. Motion for Leave to File Sur-Reply

Finally, plaintiffs claim that BTC raised new arguments in its reply, so a sur-reply is necessary. The Court disagrees. Without the need to address new arguments, "[s]urreplies are heavily disfavored by courts." *Warrior Energy Servs. Corp. v. ATP Titan M/V*, 551 F. App'x 749, 751 n.2 (5th Cir. 2014) (quoting *Weems v. Hodnett,* No. 10–CV–1452, 2011 WL 2731263, at *1 (W.D.La. July 13, 2011)). Therefore, the motion is denied.

### IV. Conclusion

Both motions are denied. The parties are instructed to contact the chambers of the Magistrate Judge within the next 10 days to set up a case management conference.

**SO ORDERED**, this the 29th day of March, 2019.

s/ Carlton W. Reeves  
UNITED STATES DISTRICT JUDGE