**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

| | |
|---|---|
| **SHELA M. BLACKWELL and JO ANN BATTIESTE, on behalf of the Sta-Home Health & Hospice, Inc. Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**BANKERS TRUST COMPANY OF SOUTH DAKOTA,  a South Dakota Limited Liability Corporation,**<br><br>**Defendant.** | Case No. 3:18-cv-141-CWR-FKB |

**PLAINTIFFS' UNOPPOSED MOTION AND INCORPORATED
MEMORANDUM OF LAW FOR PRELIMINARY APPROVAL OF
SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

## TABLE OF CONTENTS

I.   INTRODUCTION .................................................................................. 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ...................................... 1

    A.   Background ................................................................................. 1
    B.   Discovery ................................................................................... 2
    C.   Motion Practice .......................................................................... 3
    D.   The Parties' Settlement Efforts ................................................... 3

III. SUMMARY OF THE PROPOSED SETTLEMENT TERMS ........................ 3

    A.   Benefits to the Class ................................................................... 3
    B.   Notice and Administration ......................................................... 4
    C.   Service Awards to the Class Representatives and Attorneys' Fees and Costs ....... 4
    D.   Release of Claims ....................................................................... 5
    E.   Notice and Proposed Schedule of Events ................................... 5

IV.  ARGUMENT .................................................................................... 6

    A.   The Court Should Certify the Settlement Class ........................... 6

        1.   The Class satisfies the requirements of Rule 23(a) ................... 7
        2.   The claims meet the requirements of certification under Rule 23(b)(1) ... 15

    B.   The Court Should Grant Preliminary Approval of The Settlement Because It Is Fair, Reasonable and Adequate ........................................ 19

        1.   The standards for preliminary approval .................................... 19
        2.   The class is adequately represented, the negotiations were arm's length, and there is no suggestion of collusion ........................... 21
        3.   The relief obtained considering the complexity, expense, and likely duration of the litigation ...................................................... 21
        4.   The stage of the proceedings and the amount of discovery completed .... 24
        5.   The effectiveness of the proposed method of distributing relief to the Class ...................................................................................... 24
        6.   The terms of the proposed award of attorneys' fees ................. 25
        7.   The proposal treats class members equitably relative to each other ......... 25

    C.   The Court Should Approve the Notice Plan and Schedule A Fairness Hearing ... 25

V.   CONCLUSION ................................................................................. 26

## TABLE OF AUTHORITIES

**Cases**                                                            **Page(s)**

*Alday v. Raytheon Co.*,
   619 F. Supp. 2d 726 (D. Ariz. 2008) ...................................................................16

*Allen v. GreatBanc Trust Co.*,
   835 F.3d 670 (7th Cir. 2016) .............................................................................14

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)...........................................................................6, 13, 16

*Ayers v. Thompson*,
   358 F.3d 356 (5th Cir. 2004) .............................................................................23

*Baker v. Comprehensive Emp. Sols.*,
   227 F.R.D. 354 (D. Utah 2005) .........................................................................16

*Boos v. AT&T, Inc.*,
   252 F.R.D. 319 (W.D. Tex. 2008) ...............................................................7, 16

*Brundle v. Wilmington Trust, N.A.*,
   919 F.3d 763 (4th Cir. 2019) ..............................................................................7

*Brundle v. Wilmington Trust Ret. & Int'l Servs. Co.*,
   241 F. Supp. 3d 610 (E.D. Va. 2017) ................................................................14

*Buus v. WAMU Pension Plan*,
   251 F.R.D. 578 (W.D. Wash. 2008) ..................................................................16

*Casey v. Reliance Trust Co.*,
   No. 18-cv-0042 (E.D. Tex.) ...............................................................................14

*Chesemore v. Alliance Holdings, Inc.*,
   276 F.R.D. 506 (W.D. Wis. 2011) ..............................................................16, 19

*Choate v. Wilmington Trust, N.A.*,
   No. 17-cv-00250 (D. Del.) .................................................................................14

*In re Citigroup Pension Plan ERISA Litig.*,
   241 F.R.D. 172 (S.D.N.Y. 2006) ......................................................................16

*DiFelice v. U.S. Airways, Inc.*,
   235 F.R.D. 70 (E.D. Va. 2006) ...................................................................12, 17

*Douglin v. GreatBanc Trust Co., Inc.*,
　115 F. Supp. 3d 404 (S.D.N.Y. 2015)...................................................................10

*In re Enron Corp.*,
　No. MDL 1446, 2006 WL 1662596 (S.D. Tex. June 7, 2006) ................................7, 11, 16, 17

*Guidry v. Wilmington Tr.*,
　333 F.R.D. 324 (D. Del. 2019) ...........................................................................9, 18

*Hill v. Hill Bros. Constr. Co., Inc.*,
　No. 3:14-CV-213-SA-RP, 2018 WL 280536 (N.D. Miss. Jan. 3, 2018)................................21

*Hurtado v. Rainbow Disposal Co.*,
　No. 8:17-cv-01605, 2019 WL 1771797 (C.D. Cal. Apr. 22, 2019)........................................10

*In re Ikon Office Solutions, Inc.*,
　191 F.R.D. 457 (E.D. Pa. 2000)......................................................................17, 18

*Jenkins v. Trustmark Nat. Bank*,
　300 F.R.D. 291 (S.D. Miss. 2014) .....................................................................23, 24

*Jessop v. Larsen*,
　No. 14-cv-00916 (D. Utah) ($19.8 million settlement secured for ESOP plan
　participants in 2017) .........................................................................................14

*Jones v. Singing River Health Servs. Found.*,
　865 F.3d 285 (5th Cir. 2017) ...............................................................................20

*Kanawi v. Bechtel Corp.*,
　254 F.R.D. 102 (N.D. Cal. 2008)..........................................................................15

*Kelly v. Contract Callers, Inc.*,
　No. 2:19-cv-110, 2020 WL 2198981 (S.D. Miss. May 6, 2020)........................................8, 10

*Kemp v. Tower Loan of Mississippi, LLC*,
　No. 3:15-cv-499, 2017 WL 3426240 (S.D. Miss. Aug. 8, 2017) ......................................8, 19

*Klein v. O'Neal, Inc.*,
　705 F. Supp. 2d 632 (N.D. Tex. 2010) ...........................................................21, 23

*Knight v. Lavine*,
　No. 1:12-cv-611, 2013 WL 427880 (E.D. Va. Feb. 4, 2013) .................................16

*Leber v. Citigroup 401(k) Plan Inv. Comm.*,
　No. 07-cv-9329, 2017 WL 5664850 (S.D.N.Y. Nov. 27, 2017)..............................18

*Lee v. Metrocare Servs.*,
　No. 3:13-CV-2349-O, 2015 WL 13729679 (N.D. Tex. July 1, 2015)....................................23

*Lightbourn v. Cty. of El Paso, Tex.*,
  118 F.3d 421 (5th Cir. 1997), *cert. denied*, 522 U.S. 1052 (1998) ........................................10

*Lively v. Dynegy, Inc.*,
  No. 05-cv-00063, 2007 WL 685861 (S.D. Ill. Mar. 2, 2007) ...........................................11, 13

*Mary Kay Inc. v. Reibel*,
  327 F.R.D. 127 (N.D. Tex. 2018) ............................................................................................7

*Messner v. Northshore Univ. HealthSystem*,
  669 F.3d 802 (7th Cir. 2012) ..................................................................................................7

*Moore v. Int'l Filing Co., LLC*,
  No. 2:10-cv-0086, 2010 WL 2733116 (S.D. Miss. July 8, 2010) ..........................................10

*Mullen v. Treasure Chest Casino, LLC*,
  186 F.3d 620 (5th Cir. 1999) ..................................................................................................8

*Neil v. Zell*,
  275 F.R.D. 256 (N.D. Ill. 2011) ..................................................................................... *passim*

*Nistra v. Reliance Trust Co.*,
  No. 16-cv-4773, 2018 WL 835341 (N.D. Ill. Feb. 13, 2018) ......................................... *passim*

*ODonnell v. Harris County, Texas*,
  No. H-16-1414, 2019 WL 4224040 (S.D. Tex. Sept. 5, 2019) ...................................19, 20, 21

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999) ..............................................................................................................17

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*,
  330 F.R.D. 11 (E.D.N.Y. 2019) ..............................................................................................19

*Perez v. Bruister*,
  823 F.3d 250 (5th Cir. 2016) .................................................................................... 12, 13, 19

*Pfeifer v. Wawa, Inc.*,
  No. 16-cv-497, 2018 WL 2057466 (E.D. Pa. May 1, 2018).......................................11, 12, 18

*In re Polaroid ERISA Litig.*,
  240 F.R.D. 65 (S.D.N.Y. 2006) ..............................................................................................10

*Ramirez v. J.C. Penney Corp., Inc.*,
  No. 6:14-cv-601, 2017 WL 6462355 (E.D. Tex. Nov. 30, 2017)...............................15, 16, 18

*Reed v. Gen. Motors Corp.*,
  (703 F.2d 170, 172 (5th Cir. 1983) ........................................................................................20

*In re Schering Plough Corp. ERISA Litig.*,
  589 F.3d 585 (3d Cir. 2009)..................................................................17

*Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*,
  559 U.S. 393 (2010)..............................................................................6

*Slade v. Progressive Sec. Ins. Co.*,
  856 F.3d 408 (5th Cir. 2017) ...............................................................13

*Smith v. Aon Corp.*,
  238 F.R.D. 609 (N.D. Ill. 2006).......................................................7, 16

*Stanford v. Foamex L.P.*,
  263 F.R.D. 156 (E.D. Pa. 2009)..........................................................15

*Stirman v. Exxon Corp.*,
  280 F.3d 554 (5th Cir. 2002) ...............................................................10

*Swain v. Wilmington Trust, N.A.*,
  No. 17-cv-071 (D. Del.).......................................................................14

*In re Syncor ERISA Litig.*,
  227 F.R.D. 338 (C.D. Cal. 2005).........................................................12

*Thomas v. SmithKline Beecham Corp.*,
  201 F.R.D. 386 (E.D. Pa. 2001)..........................................................18

*Turner v. Murphy Oil USA, Inc.*,
  472 F. Supp. 2d 830 (E.D. La. 2007)...................................................21

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)..............................................................................8

*In re Williams Cos. ERISA Litig.*,
  231 F.R.D. 416 (N.D. Okla. 2005).......................................................16

*Woznicki v. Raydon Corp.*,
  No. 6:18-cv-2090, 2020 WL 857050 (M.D. Fla. Feb. 20, 2020).............9

*In re YRC Worldwide, Inc. ERISA Litig.*,
  No. 09-2593, 2011 WL 1303367 (D. Kan. Apr. 6, 2011).......................7

**Statutes**

29 U.S.C. § 1000, *et seq.*................................................................1, 2

29 U.S.C. § 1106................................................................................1

29 U.S.C. §§ 1109, 1132(a)(2)......................................................11, 17

ERISA §§ 409(a) and 502(a)(2) ................................................................................11, 15, 16, 17

**Other Authorities**

Fed. R. Civ. P. 23 ..................................................................................................... *passim*

Plaintiffs Shela Blackwell and Jo Ann Battieste, individually and as Class Representatives, hereby move for an order certifying a settlement class for settlement purposes, preliminarily approving a class action settlement agreement between Plaintiffs and Defendant Bankers Trust Company of South Dakota ("Bankers Trust"), approving notice to the Settlement Class, and setting a date for a Fairness Hearing.[1]

## I.      INTRODUCTION

Subject to the Court's approval, the Parties have settled this Employee Retirement Income Security Act, 29 U.S.C. § 1000, *et seq.,* ("ERISA") class action for a payment of $5,000,000.00. Should the Court grant final approval, every eligible Settlement Class Member will receive their portion of the Net Settlement Fund according to a *pro rata* Plan of Allocation.

The proposed settlement ("Settlement") satisfies all of the criteria for preliminary approval and provides an excellent result for the Settlement Class. For these reasons, discussed in more detail below, Plaintiffs request that the Court grant this motion.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      Background

This is a proposed class action brought on behalf of participants and beneficiaries of the Sta-Home Health & Hospice, Inc. Employee Stock Ownership Plan ("Plan"). The Complaint alleges that Defendant, Bankers Trust, in its capacity as trustee, violated ERISA in connection with the purchase of shares of Sta-Home Health & Hospice, Inc. ("Sta-Home") common stock by the Plan in 2014 (the "ESOP Transaction").

Specifically, Plaintiffs allege that Bankers Trust violated ERISA § 406, 29 U.S.C. § 1106, because it engaged in a prohibited transaction under ERISA by, *inter alia*, causing the

---

[1] Unless otherwise defined, all capitalized terms herein shall have the same meaning as set forth in the Parties' Settlement Agreement.

Plan to purchase the shares of Sta-Home stock, causing the Plan to borrow money from Sta-Home for that purchase, acting for the benefit of Sta-Home and its shareholders who sold their shares by approving a purchase price for Sta-Home stock that exceeded its fair market value, and receiving payment from Sta-Home for serving as trustee on behalf of the Plan.

Bankers Trust denies these allegations; denies any wrongdoing or liability; and has vigorously defended itself in this Lawsuit. Bankers Trust does not admit wrongdoing of any kind regarding the ESOP Transaction or this Lawsuit.

**B.    Discovery**

The Parties have vigorously prosecuted this Lawsuit and have engaged in robust discovery. Plaintiffs' Counsel has conducted extensive discovery regarding the facts and claims in this Lawsuit, including culling and reviewing over 33,000 documents produced by Defendant and numerous non-parties. Declaration of Gregory Y. Porter ("Porter Decl."), attached hereto as Exhibit A, ¶ 15. They prepared for, took, and defended twelve (12) depositions. *Id*. Plaintiffs took the depositions of two Bankers Trust Employees; a Fed. R. Civ. P. 30(b)(6) witness from a financial advisory firm involved in the ESOP Transaction; Bankers Trust's financial advisor; two Sta-Home executives and two of Bankers Trust's expert witnesses. *Id*. Plaintiffs defended the depositions of the Named Plaintiffs, a Fed. R. Civ. P. 30(b)(6) witness from a financial advisory firm involved in the ESOP Transaction and one of Plaintiffs' expert witnesses. *Id*. All of these depositions were attended by Bankers Trust's counsel, who also examined some of the witnesses. *Id*. Plaintiffs' Counsel has worked with expert consultants, coordinated the preparation of expert reports, analyzed Defendant's expert reports, and prepared for and defended expert depositions. *Id*.

**C.      Motion Practice**

The Parties engaged in motion practice that included Bankers Trust's Motion to Dismiss (Dkt. 12) and Plaintiffs' Motion to Compel Discovery from Sta-Home (Dkt. 43).

**D.      The Parties' Settlement Efforts**

The Parties mediated this matter with Robert A. Meyer, Esq. of JAMS. Porter Decl., ¶ 16. In advance of the mediation, the Parties drafted and submitted comprehensive mediation statements to Mr. Meyer that focused all sides on the key issues. *Id*. Counsel for the Parties and several non-parties attended a full day, remote mediation on September 2, 2020. *Id*. The attendees vigorously engaged in the mediation process, during which all attendees' counsel made presentations to Mr. Meyer. The Parties were unable to reach agreement at the mediation but discussions with the mediator continued thereafter and they were able to reach an agreement on September 10, 2020, in the amount of $5 million. *Id*.

### III.      SUMMARY OF THE PROPOSED SETTLEMENT TERMS

The material terms of the Settlement Agreement are summarized below. The proposed Settlement Class is defined as: "all persons who, at any time, were vested participants in the Sta-Home Health & Hospice, Inc. Employee Stock Ownership Plan and the beneficiaries of such participants.  Excluded from the Settlement Class are the Selling Shareholders and their immediate families, the directors of Sta-Home (other than non-Selling Shareholder directors who were employees of Sta-Home), and legal representatives, successors, and assigns of any such excluded persons." Settlement Agmt., ¶ 1.12.

**A.      Benefits to the Class**

Bankers Trust has agreed to pay $5 million ("Settlement Amount") into the Settlement Fund. Settlement Agmt., ¶¶ 7.2, 7.3. The funds remaining after deduction from the Settlement Amount for (i) taxes (or reserves to pay taxes), (ii) settlement administration fees, (iii) Court-

approved attorneys' fees or expenses, and (iv) any Service Awards to the Class Representatives, shall constitute the "Net Proceeds." The Net Proceeds will be distributed to the Settlement Class Members pursuant to the Plan of Allocation, under which the Net Proceeds will be allocated to each Settlement Class Member in proportion to the vested company shares that he or she held in the Plan, relative to the total number of such shares held by all Settlement Class Members. *Id.*, ¶ 8.2.3.

**B.      Notice and Administration**

The Settlement Administrator, CPT Group, Inc. ("CPT"), shall be responsible for disseminating Class Notice,  establishing a website for case documents, responding to inquiries, and processing any objections. The Settlement Administrator shall also implement the Plan of Allocation.

CPT shall also serve as Escrow Agent, and shall be responsible for establishing and maintaining a qualified settlement trust to hold the Settlement Amount and Net Proceeds. The Escrow Agent shall invest the assets of the qualified settlement trust pursuant to the agreement between CPT and Plaintiffs' Counsel. CPT's summary of experience and proposal for Settlement Administration and Escrow Agent services is Exhibit 1 to the Porter Declaration.

**C.      Service Awards to the Class Representatives and Attorneys' Fees and Costs**

Subject to Court approval, Plaintiffs' Counsel's fees, costs and expenses, and Service Awards to the Class Representatives shall be paid from the Settlement Amount. Settlement Agmt., ¶ 8.2. Plaintiffs shall petition the Court for Service Awards not to exceed $20,000 for each Class Representative in recognition of their service to the Class. *Id.*, ¶ 8.2.2. Plaintiffs' Counsel will also petition the Court for an award of attorneys' fees in an amount not exceeding one-third of the Settlement Amount, and for reimbursement of litigation expenses, including the

cost and expense of any service companies, experts, or consultants retained by Plaintiffs'

Counsel. *Id*., ¶ 9.1.

**D.    Release of Claims**

In exchange for payment of the Settlement Amount by Bankers Trust and satisfaction of

the conditions required by the Settlement Agreement, Plaintiffs and the Settlement Class and the

Plan will release any claims which were or could have been asserted in the Lawsuit or that in any

way relate to the Plan's investment in the stock of Sta-Home, including but not limited to the

claims related to the Plan's acquisition of Sta-Home stock or the sale of stock by any Sta-Home

shareholder. The Releasees, Released Claims and the covenant not to sue are set forth in full in

the Settlement Agreement. Settlement Agmt., ¶¶ 3, 4.

**E.    Notice and Proposed Schedule of Events**

The Settlement Agreement provides that that the Parties will request that Sta-Home

provide the names, last known addresses of Settlement Class Members, and either (1) number of

vested shares of Sta-Home stock allocated to their ESOP accounts as of March 30, 2017, which

was the day prior to the effective date of the Plan's termination, or (2) if the Settlement Class

Member received a distribution of the Settlement Class Member's entire account balance before

March 30, 2017, the number of vested shares of Sta-Home stock allocated to their ESOP account

as of the date of the prior distribution. Settlement Agmt., ¶ 2.2.3

The proposed Class Notice, Exhibit 1-A to the Settlement Agreement, provides all the

information necessary to inform Settlement Class Members about the nature of the Lawsuit, the

terms of the Settlement, and the procedures for entering an appearance to be heard or to object to

the Settlement. In addition, key court documents, including the Complaint, the Settlement

Agreement, preliminary approval papers, Plaintiffs' Motion for Award of Attorneys' Fees, and

Plaintiffs' Motion for Final Approval will be posted on the settlement website. The Class Notice

will be mailed by First Class mail. Class Counsel anticipate that Settlement Class Members'

mailing information will be largely accurate, because many Settlement Class Members were

recently employed by Sta-Home and Sta-Home completed final distributions to Plan participants

in connection with terminating the Plan in 2019. For returned mail, the Settlement Administrator

will engage in standardized processes to identify and locate Settlement Class Members. The

proposed schedule is set forth below:

| Event | Timing |
|---|---|
| CAFA Notice | Within 10 days after the Settlement Agreement is filed |
| Preliminary Approval Hearing | TBD |
| Settlement Administrator to receive Class list and Class contact information | At least twenty-one (21) days prior to the deadline for mailing notice |
| Mail Settlement Notice | At least ninety (90) days before the Fairness Hearing |
| Motion for Final Approval of Settlement and Motion for award of attorneys' fees and expenses, service awards for Named Plaintiffs | No later than thirty (30) days before the Fairness Hearing |
| Objections to the Settlement, notice of intention to appear at Fairness Hearing | Must be received by the Court on or before fifteen (15) days before the Fairness Hearing |
| Responses to Objections | No later than seven (7) days before Fairness Hearing |
| Fairness Hearing | TBD |

## IV.    ARGUMENT

### A.    The Court Should Certify the Settlement Class

As part of the Settlement, the Parties request that the Court certify the proposed

Settlement Class, defined in Section III above, for purposes of settlement only.

Certification of a class is required where the party seeking certification demonstrates the

four prerequisites of Rule 23(a) and at least one of the requirements of Rule 23(b). Fed. R. Civ.

23; *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997); *see also Shady Grove*

*Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("By its terms [Rule 23]

creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action"). It is well-established that class actions are an efficient and appropriate means of dealing with cases in which plan participants and/or beneficiaries bring an action against plan fiduciaries pursuant to ERISA. *See In re Enron Corp.*, No. MDL 1446, 2006 WL 1662596, at *14-15 (S.D. Tex. June 7, 2006) (in ERISA case, certification granted under Rule 23(b)(1)(A) and (B)); *Boos v. AT&T, Inc.*, 252 F.R.D. 319, 325 (W.D. Tex. 2008) (class certification of plan claims granted under Rule 23(b)(1)(A), (b)(1)(B), and (b)(2)); *Brundle v. Wilmington Trust, N.A.*, 919 F.3d 763, 784 (4th Cir. 2019) ("the vast majority of suits on behalf of ERISA plans take the form of class actions"); *Smith v. Aon Corp.*, 238 F.R.D. 609, 613 (N.D. Ill. 2006) (certifying class); *In re YRC Worldwide, Inc. ERISA Litig.*, No. 09-2593, 2011 WL 1303367, at *9 (D. Kan. Apr. 6, 2011) ("the vast majority of courts faced with [ERISA claims against fiduciaries] conclude that [class] certification is appropriate").

### 1.     The Class satisfies the requirements of Rule 23(a)

Rule 23(a) provides that a class must satisfy the four preconditions of Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims and defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). The plaintiff "need not make that showing to a degree of absolute certainty;" rather, "[i]t is sufficient if each disputed requirement has been proven by a preponderance of evidence." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012); *accord Mary Kay Inc. v. Reibel*, 327 F.R.D. 127, 129 (N.D. Tex. 2018) *(citing Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 228 (5th Cir. 2009)). Here, the Class satisfies all these criteria.

### a)      The Class is sufficiently numerous

Rule 23(a)(1) requires that the membership be so numerous that joinder of all members is impracticable. Courts in this District have held that joinder is impracticable when the class consists of hundreds of members. *See Kemp v. Tower Loan of Mississippi, LLC*, No. 3:15-cv-499, 2017 WL 3426240, at *2 (S.D. Miss. Aug. 8, 2017) (collecting cases); *see also Kelly v. Contract Callers, Inc.*, No. 2:19-cv-110, 2020 WL 2198981, at *2 (S.D. Miss. May 6, 2020) (noting that in most cases "the numerosity element is met if the potential number of plaintiffs exceeds forty"). Courts often presume this requirement is satisfied if a class consists of forty or more members. *See Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999). The ESOP's Form 5500 for 2019 indicates the ESOP had at least 920 participants. Porter Decl., Ex. 2, at ¶ 17. Moreover, given that Sta-Home had offices throughout Mississippi, the Settlement Class Members are likely scattered around the state, making joinder impracticable. Accordingly, Rule 23(a)(1) is satisfied.

### b)      There are common questions of law and fact

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "The threshold for commonality under Rule 23(a)(2) is not high. The bar for proving commonality is met when there is at least one issue whose resolution will affect all or a significant number of the putative class members." *Kemp*, 2017 WL 3426240, at *2 (*citing Lightbourn v. Cty. of El Paso, Tex.*, 118 F.3d 421, 426 (5th Cir. 1997), *cert. denied*, 522 U.S. 1052 (1998)). "[A] single [common] question" will satisfy Rule 23(a)(2). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). Commonality exists if the plaintiffs' claims "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity

of each one of the claims in one stroke." *Id*. at 350. The existence of "a general policy" or a "uniform employment practice" provides the necessary commonality. *Id*. at 355.

Commonality is satisfied here because Defendant's alleged violations of ERISA arise for all Settlement Class Members, and the legal claims are identical for all Settlement Class Members. Defendant either did or did not engage in a prohibited transaction under ERISA. Thus, Defendant's actions and inaction with respect to the ESOP Transaction either resulted in, or did not result in, ERISA violations toward the whole class. Common issues in this case include:

a.      Whether Defendant served as Trustee in the Plan's acquisition of Sta-Home stock;

b.      Whether Defendant was an ERISA fiduciary of the Plan;

c.      Whether Defendant caused the Plan to engage in prohibited transactions under ERISA by permitting the Plan to purchase Sta-Home stock and take loans from parties in interest;

d.      Whether Defendant engaged in good faith valuations of the Sta-Home stock in connection with the ESOP Transaction;

e.      Whether Defendant caused the Plan to pay more than fair market value for Sta-Home stock;

f.      Whether Defendant engaged in a prohibited transaction under ERISA by acting on behalf of a party adverse to the Plan and its participants in the ESOP Transaction;

g.      Whether Defendant engaged in a prohibited transaction under ERISA by receiving consideration for its own account in the ESOP Transaction;

h.      Whether the sellers of Sta-Home stock to the Plan were parties in interest;

i.      The amount of losses suffered by the Plan and its participants as a result of Defendant's ERISA violations; and

j.      The appropriate relief for Bankers Trust's violations of ERISA.

Compl. ¶ 107.

Courts have ruled that the Rule 23(a)(2) commonality requirement has been met in similar ESOP cases. *See Guidry v. Wilmington Tr.*, 333 F.R.D. 324, 329 (D. Del. 2019) ("The class claims here all depend on the question of whether the ESOP paid an inflated price for the [ ] stock . . ."); *Woznicki v. Raydon Corp.*, No. 6:18-cv-2090, 2020 WL 857050, at *8 (M.D. Fla. Feb. 20, 2020), *report and recommendation adopted*, 2020 WL 1270223 (M.D. Fla. Mar. 16, 2020); *Nistra v. Reliance Trust Co.*, No. 16-cv-4773, 2018 WL 835341, at *2 (N.D. Ill. Feb. 13, 2018) (finding commonality in ERISA action against trustee arising from ESOP's purchase of private company stock); *Douglin v. GreatBanc Trust Co., Inc.*, 115 F. Supp. 3d 404, 410 (S.D.N.Y. 2015); *Neil v. Zell*, 275 F.R.D. 256, 260-61 (N.D. Ill. 2011); *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 74 (S.D.N.Y. 2006); *Hurtado v. Rainbow Disposal Co.*, No. 8:17-cv-01605, 2019 WL 1771797, at *7 (C.D. Cal. Apr. 22, 2019) ("the common focus is on the conduct of Defendants ... Plaintiffs' claims do not focus on injuries caused to each individual [ESOP Participant], but rather on how the Defendants' conduct affected the pool of assets that make up the [ESOP].").

Plaintiffs need only show one common issue. *See Lightbourn*, 118 F.3d at 426 ("The commonality test is met when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members."). Here, however, there are numerous common issues. For the same reason that the courts in the ESOP cases listed above determined that the commonality requirement was established, the low threshold is also met here.

### c)      The typicality requirement of Rule 23(a) is met

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test for typicality is not a demanding one." *Moore v. Int'l Filing Co., LLC*, No. 2:10-cv-0086, 2010 WL 2733116, at *3 (S.D. Miss. July 8, 2010) (*citing Lightbourn*, 118 F.3d at 426). "[T]he critical inquiry is whether

the class representative's claims have the same essential characteristics of those of the putative class." *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002). Where, as here, the named plaintiffs "have asserted an identical claim to those in the proposed class . . . the typicality requirement has been met."  *Kelly*, 2020 WL 2198981, at *3; *see also Moore* at *3 ("Because the class members were all subject to the same act and are advancing the same legal theories, the typicality requirement is satisfied.").

Courts frequently find that ERISA claims meet the typicality requirement. *See Pfeifer v. Wawa, Inc.*, No. 16-cv-497, 2018 WL 2057466, at *4 (E.D. Pa. May 1, 2018) (finding typicality where "Class Representatives' stock was sold at the same price, after the same valuation process, and in the same circumstances as every other Class Member."). That is not surprising because, by definition, an action brought pursuant to ERISA §§ 409(a) and 502(a)(2) is brought on behalf of the plan and any recovery must be paid "to such plan." 29 U.S.C. §§ 1109(a), 1132(a)(2); *Lively v. Dynegy, Inc.*, No. 05-cv-00063, 2007 WL 685861, at *10 (S.D. Ill. Mar. 2, 2007) (case arising under § 502(a)(2) meets the typicality requirement because the "action is brought on behalf of the Plan, not the individual participants, so that Plaintiff's claims, of necessity, are typical of the claims of the members of the proposed class"); *see also Enron Corp.*, 2006 WL 1662596, at *11 ("given the representative nature of suit pursuant to ERISA 502(a)(2), each plan participant/class member's claims are necessarily typical of those of the rest of the class") (citation, punctuation omitted).

Here, the Named Plaintiffs were participants in the ESOP during the relevant time period. Declaration of Shela Blackwell ("Blackwell Decl."), Ex. 3 to the Porter Decl. at ¶ 3; Declaration of Jo Ann Battieste ("Battieste Decl."), Ex. 4 to the Porter Decl. at ¶ 3. The Plan's primary asset was the Sta-Home stock it purchased during the relevant time period. In *Neil v. Zell*, an ERISA

case arising from ESOP transactions, the court held that the named plaintiffs satisfied the typicality requirement because they "held the same investment as did all other members of the . . . ESOP"–employer stock. 275 F.R.D. at 261; *see also Nistra*, 2018 WL 835341, at *3 (finding typicality, observing the plaintiff's "claim arises out of [the trustee's] alleged breach of its fiduciary duties to the Plan, and every Plan participant could bring the same claim based on the same conduct. His claim could not be any more typical of the absent class members' claims. [His] suit is on behalf of the Plan, and he asks for no individualized relief.") (internal citation omitted); *Pfeifer*, 2018 WL 2057466 at *4.

Plaintiffs seek to recover the Plan's losses and other relief on behalf of the Plan as a whole. All losses arising from the prohibited transaction flow to Plan participants in proportion to the number of Sta-Home shares allocated to their respective accounts. *See Perez v. Bruister*, 823 F.3d 250, 258 (5th Cir. 2016). The claims arise from the same course of conduct by Defendant that gives rise to the claims of other Settlement Class Members—namely, that Defendant engaged in a prohibited transaction and caused the Plan to pay more than fair market value for shares of Sta-Home stock that it purchased from parties in interest. Adjudication of the Named Plaintiffs' claims will necessarily determine the answer to common questions affecting the entire Settlement Class because the underlying actions affected the Plan as a whole. *See DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70, 79 (E.D. Va. 2006); *accord In re Syncor ERISA Litig.*, 227 F.R.D. 338, 344 (C.D. Cal. 2005).

The claims of all Settlement Class Members stem from a single event and are based on the same legal or remedial theory on behalf of the Plan, the Named Plaintiffs' claims are not merely "typical," but identical. Plaintiffs have passed the undemanding test for typicality.

**d)** **The proposed Class Representatives and their counsel will fairly and adequately protect the interests of the Class**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is met when (1) class counsel prosecute the action zealously and competently; (2) representative parties are willing and able to take an active role in and control the litigation and protect the interests of absentee class members; and (3) there are no conflicts of interest between the representative parties and the class members. *See Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 412 (5th Cir. 2017). These requirements are met here.

**i)** **The proposed Class Representatives are adequate representatives.**

Under Rule 23(a)(4), a plaintiff must have the same interests and suffer the same injury as the class. *See Amchem Prods.*, 521 U.S. at 625-26; *Lively*, 2007 WL 685861, at *11. In an ERISA action such as this, the proposed class representatives and the class members share the same interests because each class member is bringing suit on the plan's behalf to recover plan losses caused by the defendants' alleged breaches of the statute. *See Bruister*, 823 F.3d at 258; *Nistra*, 2018 WL 835341, at *3; *Lively*, 2007 WL 685861, at *13.

The proposed representatives have no conflicts, and indeed identical interests, as the unnamed members of the Settlement Class. Here, the Named Plaintiffs assert claims on the Plan's behalf and request no individual relief. All members of the Settlement Class have identical claims and have suffered the same injury. There is no claim that any member of the Settlement Class benefited from the ESOP Transaction. Any possible factual distinctions between the proposed representatives and Settlement Class Members are insignificant.

And the proposed representatives have shown a willingness and the ability to take an active role in the litigation and protect the interest of the absentee class members. The proposed

13

Class Representatives have been actively engaged in the litigation, have provided documents to counsel, responded to discovery, and sat for a deposition. Blackwell Decl. ¶¶ 8-10; Battieste Decl. ¶¶ 8-10.

Therefore, the adequacy requirement of Rule 23(a)(4) is met.

### ii)        *Counsel meet the requirements of Rule 23(a)(4) & 23(g).*

As for counsel's adequacy, Court's consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g). Plaintiffs' counsel in this case are well-qualified.

Gregory Porter is a partner with Bailey & Glasser LLP. He has specialized in employee benefits and ERISA litigation since 1998. Porter Decl. ¶ 8. He has served as class counsel or co-counsel in numerous ERISA class actions, including ESOP class actions such as *Brundle v. Wilmington Trust Ret. & Int'l Servs. Co.*, 241 F. Supp. 3d 610 (E.D. Va. 2017) ($29.7 million trial judgment); *Allen v. GreatBanc Trust Co.*, 835 F.3d 670 (7th Cir. 2016) (reversing trial court ruling on motion to dismiss in an ESOP class action; lawsuit recently settled for $2.3 million); *Jessop v. Larsen*, No. 14-cv-00916 (D. Utah) ($19.8 million settlement secured for ESOP plan participants in 2017); *Swain v. Wilmington Trust, N.A.*, No. 17-cv-071 (D. Del.) ($5 million settlement); *Casey v. Reliance Trust Co.*, No. 18-cv-0042 (E.D. Tex.) ($6.25 million settlement); *Choate v. Wilmington Trust, N.A.*, No. 17-cv-00250 (D. Del.) ($19.5 million settlement); *Nistra v. Reliance Trust Co.*, No. 16-cv-4773 (N.D. Ill.) (court granted final approval on June 19, 2020). *Id.* ¶ 9. Bailey & Glasser currently represents plaintiffs in several other ESOP lawsuits. *Id.* A

14

summary of Bailey & Glasser's ERISA practice experience is attached to the Porter Declaration as Exhibit 5.

Ryan T. Jenny is a partner with Bailey & Glasser LLP. He has twenty years of experience representing clients in ERISA fiduciary cases. Porter Decl. ¶ 12. He has served as class counsel in ESOP cases involving claims that fiduciary trustees caused the ESOP to overpay for company stock, including those listed in the prior paragraph. Patrick Muench is a partner with Bailey & Glasser LLP. He has specialized in complex litigation since 2009. *Id.* ¶ 13. He served as counsel in the cases listed in the prior paragraph.

W. Eric Stracener is a partner with the law firm Stracener & Neely in Jackson, Mississippi.  Declaration of W. Eric Stracener ("Stracener Decl."), attached hereto as Exhibit B, ¶ 5. Mr. Stracener has over 20 years of trial and appellate litigation experience in Mississippi Federal District Courts; the Fifth Circuit Court of Appeals; and the Mississippi State Court System. *Id.*, ¶ 9.  He has tried many jury trials to verdict and successfully defended verdicts upon appeal. *Id.* W. Andrew Neely is also a partner of the law firm of Stracener & Neely and has handled myriad litigation cases in Mississippi State and Federal Courts, including trying many cases to verdict and defended these verdicts at the appellate level. *Id.*, ¶ 10. Mr. Stracener and Mr. Neely were associated as local counsel and have provided practical assistance and experience to lead Plaintiff's counsel herein. *Id.*, ¶¶ 6-7, 11.

Not only do these attorneys have extensive experience litigating class actions, including numerous ESOP cases, they have worked diligently to litigate the claims. Porter Decl. ¶ 15**.** There should be no question that counsel have brought sufficient skill and resources to litigate this case. Thus, Plaintiffs' counsel satisfy Rule 23(a)(4) and 23(g).

### 2.    The claims meet the requirements of certification under Rule 23(b)(1)

In addition to meeting the requirements of Rule 23(a), claims must meet at least one of

the three provisions of Rule 23(b). The claims meet the requirement of Rule 23(b)(1).

"Most ERISA class actions are certified under Rule 23(b)(1)." *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111 (N.D. Cal. 2008). "[T]he unique and representative nature of an ERISA § 502(a)(2) suit" makes such claims particularly appropriate. *Stanford v. Foamex L.P.*, 263 F.R.D. 156, 174 (E.D. Pa. 2009); *Ramirez v. J.C. Penney Corp., Inc.*, No. 6:14-cv-601, 2017 WL 6462355, at *3 (E.D. Tex. Nov. 30, 2017), *report and recommendation adopted*, 2017 WL 6453012 (E.D. Tex. Dec. 18, 2017) (noting "claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held").

### a)   Class certification under Rule 23(b)(1)(A) is appropriate

A Rule 23(b)(1)(A) class may be maintained if prosecuting separate actions by individual class members would create a risk of inconsistent adjudications. This rule "takes in cases where the party is obliged by law to treat the members of the class alike . . . , or where the party must treat all alike as a matter of practical necessity." *Amchem*, 521 U.S. at 614 (quotation omitted). "ERISA requires plan administrators to treat all similarly situated participants in a consistent manner." *Alday v. Raytheon Co.*, 619 F. Supp. 2d 726, 736 (D. Ariz. 2008) (citations omitted). For this reason, courts have certified cases involving violations of ERISA under Rule 23(b)(1)(A). *See Enron Corp.*, 2006 WL 1662596, at *15; *Boos*, 252 F.R.D. at 325; *Neil*, 275 F.R.D. at 267-68; *Knight v. Lavine*, No. 1:12-cv-611, 2013 WL 427880, at *4 (E.D. Va. Feb. 4, 2013); *Chesemore v. Alliance Holdings, Inc.*, 276 F.R.D. 506, 517 (W.D. Wis. 2011); *Buus v. WAMU Pension Plan,* 251 F.R.D. 578, 588 (W.D. Wash. 2008); *In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172, 180 (S.D.N.Y. 2006); *Baker v. Comprehensive Emp. Sols.*, 227 F.R.D. 354, 360 (D. Utah 2005); *Smith*, 238 F.R.D. at 617-18; *In re Williams Cos. ERISA Litig.*, 231 F.R.D. 416, 425 (N.D. Okla. 2005).

The risk of inconsistent adjudications is apparent in this case. For example, the central issue in this case is whether the Plan acquired Sta-Home stock at an appropriate valuation and pursuant to a good faith investigation. Separate lawsuits over these issues could result in different outcomes. Inconsistent adjudications on the true fair market value of Sta-Home stock at the time of the Plan's stock purchase obtained by similarly-situated participants would make it impossible for the Plan administrator to treat similarly-situated participants alike. Accordingly, certification under Rule 23(b)(1)(A) is appropriate.

### b)      Class certification under Rule 23(b)(1)(B) is appropriate

Certification under Rule 23(b)(1)(B) is appropriate where "*any* individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999) (emphasis added). One example of an action ideally suited for certification under Rule 23(b)(1) is "the adjudication of the rights of all participants in a fund in which the participants have common rights." *Id.* at 834 n.14. Rule 23(b)(1)(B) is designed for "an action which charges a breach of trust by a[ ] . . . trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust." Fed. R. Civ. P. 23, Advisory Committee Notes to 1966 Amendment. That precisely describes the claims here.

Claims involving ERISA prohibited transactions must be brought in a representative capacity on behalf of the plan under § 502(a)(2) for § 409 relief. 29 U.S.C. §§ 1109, 1132(a)(2); *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 594-95 (3d Cir. 2009). Thus, courts recognize that ERISA cases are the classic examples of Rule 23(b)(1)(B) class actions. *See*, *e.g.*, *Enron Corp.*, 2006 WL 1662596, at *14; *Neil*, 275 F.R.D. at 267-68; *DiFelice*, 235 F.R.D. at 80. As one court explained:

> [G]iven the nature of an ERISA claim which authorizes plan-wide relief, there is a risk that failure to certify the class would leave future plaintiffs without relief.... There is also risk of inconsistent dispositions that would prejudice the defendants: contradictory rulings as to whether [defendant] had itself acted as a fiduciary, whether the individual defendants had, in this context, acted as fiduciaries, or whether the alleged misrepresentations were material would create difficulties in implementing such decisions.

*In re Ikon Office Solutions, Inc.,* 191 F.R.D. 457, 466 (E.D. Pa. 2000) (citations omitted). This is particularly true for cases involving an ESOP. *See*, *e.g.*, *id.* at 466-67 (certifying 23(b)(1) class).

Because Rule 23(b)(1)(B) was designed for actions alleging breach of fiduciary duties by trustees or establishing the rights of participants in a fund, numerous courts have found that ERISA claims determining rights or benefits under a plan or claims involving breaches of fiduciary duty are suitable for certification under this Rule. "[T]he structure of ERISA favors the principles [of] Rule 23(b)(1)(B), since the statute creates a 'shared' set of rights among the plan participants by imposing duties on the fiduciaries relative to the plan" and it "structures relief in terms of the plan and its accounts, rather than directly for the individual participants." *Leber v. Citigroup 401(k) Plan Inv. Comm.*, No. 07-cv-9329, 2017 WL 5664850, at *17 (S.D.N.Y. Nov. 27, 2017) (citation omitted); *see also Ramirez*, 2017 WL 6462355, at *3 (certifying ERISA fiduciary claims under 23(b)(1)); *Pfeifer*, 2018 WL 2057466, at *4 (certifying ERISA fiduciary duty claims under Rule 23(b)(1)); *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 397 (E.D. Pa. 2001) (certifying ERISA fiduciary claims under Rule 23(b)(1)(B)); *Ikon*, 191 F.R.D. at 466 (certifying claims for fiduciary duty under Rule 23(b)(1));

This type of private company ESOP case is often certified under Rule 23(b)(1)(B). *See*, *e.g.*, *Nistra*, 2018 WL 835341, at *3; *Neil*, 275 F.R.D. at 267-68; *Guidry*, 333 F.R.D. at 331 (certifying class in ESOP case under 23(b)(1)(B)). Such certification is appropriate here where the central issue is that Defendant caused the Plan to acquire Sta-Home at more than fair market

value. The key issues in the case thus focus on Defendant's conduct—principally, whether and how it caused the complained of prohibited transactions, the adequacy of its investigation into the value of Sta-Home stock, the information used in its valuations, the conclusions drawn from that information, and the act of transacting certain business with the sellers. Thus, a judgment that Defendant breached ERISA would apply to the Plan as a whole and impact all class members equally. Further, any money recovered will be paid to the Plan, meaning that resolution of these issues will affect *all* participants in the Plan. *See Bruister*, 823 F.3d at 258; *Chesemore*, 276 F.R.D. at 517; *Neil*, 275 F.R.D. at 268.

Certification pursuant to Fed. R. Civ. P. 23(b)(1)(B) is also appropriate.

**B.      The Court Should Grant Preliminary Approval of The Settlement Because It Is Fair, Reasonable and Adequate**

**1.      The standards for preliminary approval**

Rule 23(e) provides that a class action cannot be settled without court approval and notice to the class. At the preliminary approval stage, the court must determine whether the settlement justifies giving notice of the settlement to the class. The Court's task is to evaluate whether the settlement is within the range of reasonableness of possible approval. *Kemp*, 2017 WL 3426240, at *4.

Rule 23, as amended in 2018, provides specific direction to federal courts considering whether to grant preliminary approval of a class action settlement and approve the issuance of notice. Fed. R. Civ. P. 23(e), Committee Notes. The court must be satisfied that it "will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B); *ODonnell v. Harris County, Texas,* No. H-16-1414, 2019 WL 4224040, at *7 (S.D. Tex. Sept. 5, 2019). Therefore, although the factors cited in Rule 23(e)(2) apply to final approval, courts often look to them to determine whether it

will likely grant final approval based on the information then before the Court. *See*, *e.g. In re*

*Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, 330 F.R.D. 11, 28

(E.D.N.Y. 2019). Those factors are as follows:

> (A) the class representatives and counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Rule 23(e)(2); *see also ODonnell*, 2019 WL 4224040 at *8 (citing Fed. R. Civ. P. 23(e)).

Prior to the 2018 amendments, the Fifth Circuit traditionally evaluated class action

settlements using the six factors outlined in *Reed v. Gen. Motors Corp*., (the "*Reed* factors"):

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

703 F.2d 170, 172 (5th Cir. 1983) (citation omitted); *see also Jones v. Singing River Health*

*Servs. Found.,* 865 F.3d 285, 293 (5th Cir. 2017). Plaintiffs will address each of these factors to

the extent they are applicable, many of which overlap.[2] Ultimately, to approve the proposed

---

[2] There is no agreement required to be produced under Rule 23(e)(2)(C)(iv), and since Notice has not yet been sent, the opinion of the Class (*Reed* factor #6) cannot be evaluated yet.

settlement the court must determine that it is fair, reasonable and adequate. *See Jones*, 865 F.3d at 293.

### 2. The class is adequately represented, the negotiations were arm's length, and there is no suggestion of collusion

Rule 23(e)(2)(A), requiring adequate representation by the Plaintiffs and their counsel is addressed in Section IV(A)(1)(d) above. In addition, and in satisfaction of Rule 23(e)(2)(B), the Parties' negotiations were at arm's length, extensive and hard fought, with the assistance of a professional, experienced class action mediator. *See* Section II(D) above; Porter Decl. ¶ 16. The arm's length nature of the negotiations, and the vigorous litigation of the Lawsuit, also establish a lack of collusion, the first *Reed* factor. *ODonnell*, 2019 WL 4224040, at *9. As the court observed in *ODonnell*, like here, there is no suggestion of fraud or collusion in this case, where "[t]he proposed class settlement was the product of rigorous, hard-fought negotiations conducted at arm's-length." *Id*. In such cases, the court may "presume that no fraud or collusion occurred between counsel in the absence of any evidence to the contrary." *Hill v. Hill Bros. Constr. Co., Inc.*, No. 3:14-CV-213-SA-RP, 2018 WL 280536, at *2 (N.D. Miss. Jan. 3, 2018) (citations omitted).

### 3. The relief obtained considering the complexity, expense, and likely duration of the litigation

Rule 23(e)(2)(C)(i), and the second and fourth *Reed* factor, require the court to consider the adequacy of the relief obtained, in light of the risk, complexity, cost, and likely duration of the litigation. This factor requires a court to determine whether the settlement falls within "a reasonable range of recovery, given the likelihood of the plaintiffs' success on the merits." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 656 (N.D. Tex. 2010); *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 849 (E.D. La. 2007).

The litigation would be even more lengthy and expensive if this Lawsuit were to proceed further. Plaintiffs faced significant risks. Plaintiffs and Bankers Trust had vastly different views about Bankers Trust's actions, its potential liability and the likely outcome of the litigation. Plaintiffs' core allegations regarding the Sta-Home stock purchase rested on facts that were strongly contested by Bankers Trust, including the accuracy of Sta-Home's projections, whether the valuation methods employed by Bankers Trust and its advisors were proper, and whether there were negative facts that were ignored by or not sufficiently investigated by Bankers Trust during the due diligence and negotiation process.

Bankers Trust vigorously denied all of the allegations, asserted affirmative defenses and otherwise defended its actions with respect to the purchase. Bankers Trust pointed to evidence which in its view, supported the conclusion that it has no liability. Bankers Trust also retained four experts who support such conclusions. If the Lawsuit were to proceed through trial, Plaintiffs would have to overcome these defenses and arguments.

Plaintiffs and Bankers Trust also strongly disagree on the proper measure of damages. Bankers Trust contends that the Plan and its participants were not harmed at all. Plaintiffs, on the other hand, argued that the Plan incurred significant financial damage through its overpayment for Sta-Home shares. The Parties have exchanged position papers supporting their differing views of what a proper measure of damages should be and presented their theories extensively in the mediation. That core dispute had not been resolved at the time the Parties reached the proposed Settlement and the uncertainty put both Parties at great risk.

These fact intensive inquiries would have led to a battle of experts and conflicting evidence and testimony, which would have placed the ultimate outcome of the litigation in

doubt, because no party could reasonably be certain that its expert or evidence would carry the day.

Before the Parties reached trial, they would have to expend substantial time and effort to prepare the joint pretrial exhibit list including identification of relevant exhibits and litigating any motions *in limine*. And, regardless of the outcome at trial, there likely would have been appeals that followed, further delaying resolution and causing more expense. In sum, Plaintiffs and the Settlement Class may have waited several years for ultimate resolution and recovery

In light of the inherent uncertainty, and potential for delay, a settlement of $5,000,000—approximately $5,000 per participant before fees and other costs are applied—is an excellent result for the Settlement Class. See Exhibit 6 to Porter Decl. reflecting average recoveries. As courts in this Circuit have noted, "in the context of a class action settlement, "compromise is the essence of a settlement." *Jenkins v. Trustmark Nat. Bank*, 300 F.R.D. 291, 301 (S.D. Miss. 2014); *see also Klein*, 705 F. Supp. 2d at 649 (same and noting "settlement need not accord the plaintiff class every benefit that might have been gained after full trial"). "The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush." *Jenkins*, 300 F.R.D. at 303 (*quoting In re Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D. La. 1993)); *see also Lee v. Metrocare Servs.*, No. 3:13-CV-2349-O, 2015 WL 13729679, at *6 (N.D. Tex. July 1, 2015) ("Inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.") (internal citations omitted). A certain recovery for the Settlement Class now, far outweighs the mere possibility of future relief after years of costly litigation. *See Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004).

Considering the costs, risks and delay of trial and appeal, the immediate and certain recovery of $5 million outweighs the uncertain possibility of a greater amount in the future, particularly given the amount of time it would take—including trial, post-trial and post-judgment briefing, and appeals—for any judgment to be reduced to actual payment to Plan participants.

### 4.     The stage of the proceedings and the amount of discovery completed

This *Reed* factor requires the Court to evaluate "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *Jenkins*, 300 F.R.D. at 303–04 (citations omitted).

In this case, as described in Section II(B) above, the Parties completed fact discovery and expert discovery (with the exception of three depositions) before they reached a settlement in principle, and therefore had a complete opportunity to test their claims and defenses and understand the strengths and weaknesses of their positions.

### 5.     The effectiveness of the proposed method of distributing relief to the Class

Rule 23(e)(2)(C)(ii), examines the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims. Here, the Settlement Agreement contemplates that the Parties will request that Sta-Home provide, or cause to be provided, the names, last known addresses of the Settlement Class members, and number of shares of Sta-Home stock allocated to their ESOP account as of (1) the day prior to the Plan's termination, or (2) if the Class Member received a prior distribution of the Class Member's entire account balance, the number of vested shares of Sta-Home stock allocated to their ESOP account as of the date of the prior distribution. Settlement Agmt., ¶ 2.2.3. The Settlement Administrator will use that information, and follow the Plan of Allocation. Settlement Agmt., ¶ 8.2.3. All

Settlement Class Members will receive a check directly from the Settlement Administrator or as a deposit into an individual retirement account.

### 6.      The terms of the proposed award of attorneys' fees

Rule 23(e)(2)(C)(iii) looks at the terms of any proposed award of attorneys' fees, including timing of payment. As described above in Section III(C), Plaintiffs' Counsel will file an application seeking an award of attorneys' fees in an amount not exceeding one-third of the Settlement Amount, plus reimbursement of litigation expenses. *Id.*, ¶ 9.1.

### 7.      The proposal treats class members equitably relative to each other

Under Rule 23(e)(2)(D), the court must consider whether the proposal treats class members equitably relative to each other. Under the Plan of Allocation, distributions to the Settlement Class Members will be based on the number of vested shares he or she held in the Plan. Following that process, individual Settlement Class Members will not receive preferential treatment but instead all will receive *pro rata* distributions based on the number of vested shares in their account and as detailed in the Plan of Allocation.

## C.      The Court Should Approve the Notice Plan and Schedule A Fairness Hearing

As described in Section III(B) above, the Parties have agreed, subject to Court approval, to a Notice Plan, which calls for individual mailed notice to the Settlement Class. This notice and the manner in which it will be disseminated satisfies Rule 23(e)(1) and constitutional due process concerns.

Plaintiffs' request that the Court approve CPT as Settlement Administrator and Escrow Agent. As detailed in Exhibit 1 to the Porter Declaration, CPT has extensive experience in the administration of settlements of this type.

Finally, the Parties request that the Court schedule a Fairness Hearing on Plaintiffs' motion for final approval of the Settlement and motion of an award of reasonable attorneys' fees

and Service Award to the Named Plaintiffs, as set forth in the proposed Preliminary Approval Order. This will establish a reasonable and efficient process for disseminating notice, providing the opportunity for Settlement Class Members to object, and considering final approval of the Settlement.

## V.   CONCLUSION

The proposed settlement meets the standard for preliminary approval. Accordingly, Plaintiffs respectfully request that the Court issue an Order: (a) granting preliminary approval of the Settlement Agreement; (b) certify the Settlement Class for settlement purposes, and appoint the Named Plaintiffs as Class Representatives, and Plaintiffs' Counsel as Class Counsel; (c) approve the proposed Class Notice; (d) appoint CPT as the Settlement Administrator; (e) approve the Plan of Allocation; (f) appoint CPT as Escrow Agent; and (g) set a date for a Fairness Hearing.

The Parties agree to the following schedule of events subject to the Court's approval:

| Event | Timing |
|---|---|
| CAFA Notice | Within 10 days after the Settlement Agreement is filed |
| Preliminary Approval Hearing | TBD |
| Settlement Administrator to receive Class list and Class contact information | At least twenty-one (21) days prior to the deadline for mailing notice |
| Mail Settlement Notice | At least ninety (90) days before the Fairness Hearing |
| Motion for Final Approval of Settlement and Motion for award of attorneys' fees and expenses, service awards for Named Plaintiffs | No later than thirty (30) days before the Fairness Hearing |
| Objections to the Settlement, notice of intention to appear at Fairness Hearing | Must be received by the Court on or before fifteen (15) days before the Fairness Hearing |
| Responses to Objections | No later than seven (7) days before Fairness Hearing |
| Fairness Hearing | TBD |

## REQUEST AS TO HEARING

The Plaintiffs respectfully request that the Court decide the motion on the papers, or, in the alternative, schedule a telephonic or video hearing.

Dated: January 13, 2021                    BAILEY & GLASSER LLP


                                           */s/ Gregory Porter*　　　　　
                                           Gregory Y. Porter (*pro hac vice*)
                                           Ryan T. Jenny (*pro hac vice*)
                                           Patrick O. Muench (*pro hac vice*)
                                           1055 Thomas Jefferson Street NW, Suite 540
                                           Washington, DC 20007
                                           (202) 463-2101
                                           (202) 463-2103 (Fax)
                                           gporter@baileyglasser.com
                                           rjenny@baileyglasser.com
                                           pmuench@baileyglasser.com

                                           STRACENER & NEELY PLLC

                                           W. Eric Stracener
                                           W. Andrew Neely
                                           304 N. Congress St.
                                           Jackson, MS 39201
                                           Tel: (601) 206-0885
                                           eric@sn-law.net
                                           andrew@sn-law.net

                                           *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 13, 2021, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

<i>/s/ Gregory Porter</i>
Gregory Porter